UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| BASF AGRO B.V., MERIAL LIMITED, and MERIAL SAS<br><br>         Plaintiffs,<br><br>v.<br><br>CIPLA LIMITED, *et al.*,<br><br>         Defendants, and<br><br>VELCERA, INC. and FIDOPHARM, INC.<br><br>         Intervenors. | Civil Case No. 3:07-cv-00125-CDL |

**PLAINTIFFS MERIAL LIMITED AND MERIAL SAS'S MEMORANDUM IN SUPPORT OF THEIR EMERGENCY MOTION FOR RECONSIDERATION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

    I.    This Court Should Exercise Its Authority to Require Velcera to Recall Any Currently Existing Inventory From its Retail Partners. ................................. 2

    II.   A Recall is Necessary to Prevent Further Irreparable Harm to Merial. ................ 4

CONCLUSION ....................................................................................................................... 5

## TABLE OF AUTHORITIES

**CASES**

*Alan Tracy, Inc. v. Trans Globe Imps., Inc.*,
  Nos. 94-1205, 1995 WL 331109 (Fed Cir. June 2, 1995) ............................................................3

*Cherry River Music Co., v. Simitar Entm't, Inc.*,
  38 F. Supp. 2d 310 (S.D.N.Y. 1999) ...........................................................................................3

*Nikon Inc. v. Ikon Corp.*,
  987 F.2d 91 (2d Cir. 1993) ..........................................................................................................3

*Ortho McNeil Pharm. v. Barr Lab., Inc.*,
  No. 03-4678, 2009 WL 2182665 (D.N.J. July 22, 2009) .............................................................3

*Pem-Am., Inc. v. Sunham Home Fashions*,
  83 F. App'x 369 (2d Cir. 2003) ...................................................................................................3

*Randall May Int'l, Inc. v. DEG Music Prods., Inc.*,
  No. 2009-1367, 2009 WL 2355838 (Fed. Cir. July 30, 2009) .....................................................3

**INTRODUCTION**

It is well settled that district courts have the authority to prevent further irreparable harm to a patentee by requiring adjudged infringers to recall any existing inventory of infringing products in the possession of downstream distributors and retailers, even though the distributors and retailers are not themselves parties to the action. Because Velcera has abused the 60-day stay graciously granted by this Court to permit it time to seek an expedited appeal by, on information and belief, transferring its entire PetArmor Plus inventory to its retail partners' large warehousing and distribution centers, Merial requests that this Court reconsider its August 19, 2011, Order and clarify that Velcera must, in good faith, seize any U.S. inventory of PetArmor Plus, including by recalling the inventory of infringing products in the possession of its retail partners.

To be clear, Merial does not expect, and has never suggested, that Velcera should seize products already purchased by pet-owners. But absent an Order clarifying that Velcera should recall the infringing PetArmor Plus products from its retail partners, Velcera will be permitted to make a mockery of the injunction and seizure remedies in this Court's June 21, 2011 Order and of the Court's gracious 60-day stay. Requiring Velcera to recall the infringing products is the only practical way to prevent further irreparable harm to Merial, especially since Merial will likely not be able to collect the full amount of its lost profits from Velcera or Cipla.

**FACTUAL BACKGROUND**

On June 21, 2011, this Court found that Velcera acted in concert with Cipla to violate the Court's 2008 Order through the sale of the infringing PetArmor Plus in the U. S. (D.I. 75 at 41, ¶ 26). Finding that "Merial ha[d] suffered irreparable injury" and that "Merial ha[d] also demonstrated that there is not an adequate remedy at law," this Court "permanently enjoined [Velcera] from selling, causing to be sold, offering for sale, and causing to be offered for sale in

the United States . . . PetArmor Plus" (*id.* at 47, ¶ 4). In addition, this Court ordered the "seizure of any existing inventory in the United States of [PetArmor Plus]" (*id.* at 46, ¶ 1).

After finding Velcera in contempt, this Court graciously granted Velcera and Cipla a 60-day stay of the remedies section of its Order to permit them the opportunity to seek an expedited appeal with the Federal Circuit (*id.* at 48, ¶ 4). This Court granted this stay despite "the Court's strong conviction as to the correctness of its final decision" (D.I. 89 at 3). This Court explained that it simply wanted to provide the Federal Circuit time to make a decision on whether to expedite the appeal and to look at and decide whether to impose a stay beyond the one graciously provided by this Court (D.I. 81 (6-8-11 Tr.) at 207:18-208:4).

The Federal Circuit apparently agrees with this Court's strong conviction as to the correctness of its judgment. On July 18, the Federal Circuit denied Velcera's and Cipla's Motion to Expedite the Appeal (Decl. of Matthew W. Howell, Ex. 1). In addition, on August 17, after assessing the likelihood of success on appeal and weighing the equities, the Federal Circuit denied Velcera's and Cipla's motion to stay this Court's contempt order, pending appeal (*id.*, Ex. 2).[1]

On information and belief, Velcera used the 60-day stay to transfer its entire inventory of PetArmor Plus to large warehousing and distribution centers of its retail partners. It then filed, on August 18, its motion requesting confirmation that the Court's Order did not apply to its retailer partners (D.I. 97). The next day, on August 19, this Court granted Velcera's Emergency Motion.

## ARGUMENT

**I.  This Court Should Exercise Its Authority to Require Velcera to Recall Any Currently Existing Inventory From its Retail Partners.**

District courts have "broad discretion as to recall orders which are part of permanent

---

[1] The Federal Circuit did order that Merial should not destroy any inventory required to be delivered by the appellants during the pendency of this appeal.

injunctions." *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 97 (2d Cir. 1993) (affirming order requiring recall of all products from the marketplace); *see also Randall May Int'l, Inc. v. DEG Music Prods., Inc.*, No. 2009-1367, 2009 WL 2355838, at * 1 (Fed. Cir. July 30, 2009) (holding court did not abuse its discretion in ordering recall of infringing products from dealers and distributors); *Alan Tracy, Inc. v. Trans Globe Imps., Inc.*, No. 94-1205, 1995 WL 331109, at *6 (Fed Cir. June 2, 1995) (affirming recall of inventory of infringing products in the possession of the infringer's retail customers); *Pem-Am., Inc. v. Sunham Home Fashions*, 83 F. App'x 369, at *1-*2 (2d Cir. 2003) (affirming district court's order requiring infringer to recall infringing products from the inventory of the retailers to which they had already been distributed).

For example, in *Cherry River Music Co., v. Simitar Entm't, Inc.*, 38 F. Supp. 2d 310, 323-324 (S.D.N.Y. 1999), the district court ordered the defendant to issue a recall of the infringing products from retailers and distributors. Rejecting the defendant's contention that issuing a recall would be unduly expensive, the district court in that case noted that any hardship was defendant's own making as "there is every reason to believe that it sought to get the product into the hands of distributors and retailers as quickly as possible to set up precisely the argument that it now makes." *Id.* at 323. The court further explained that because the defendant had "shipped substantially all of the offending product, a prohibitory injunction alone, which would be binding [on the defendant], would not stop sales of the allegedly infringing [product]" and, therefore, a "denial of a recall order would deprive plaintiffs of any effective relief." *Id.* at 324; *see also Ortho McNeil Pharm. v. Barr Lab., Inc.*, No. 03-4678, 2009 WL 2182665, at *11 (D.N.J. July 22, 2009) (ordering a generic pharmaceutical manufacturer to recall all of the infringing product it had delivered for sale in the marketplace because, given the volume of delivered product, injunctive relief alone would be ineffective in ameliorating the harm to the plaintiff).

Similarly, here, if Velcera is only required to produce to Merial the inventory remaining in its possession (which likely is none), Velcera's retail partners will be able to continue to flood the market for months, which span the peak of the flea and tick season, using inventory warehoused in their distribution centers. Thus, absent clarification that Velcera should recall its infringing products, the very irreparable harm that the Court's injunction and seizure remedies were designed to prevent will continue unabated.

Moreover, such a recall will not harm Velcera's retail partners because Velcera can offer to provide them with a full refund of their purchase price (including shipping costs). Given that Velcera's retailer partners likely had knowledge of the Court's June 21, 2011 Order (D.I. 75) when purchasing the infringing product during the stay, it should not come as a surprise to either Velcera or its partners that any remaining inventories in existence once the stay expired must be recalled.

## II. A Recall is Necessary to Prevent Further Irreparable Harm to Merial.

On the other hand, requiring Velcera to recall the infringing PetArmor Plus products is necessary to prevent Merial from suffering the very irreparable harm that this Court's Order was designed to prevent (*see, e.g.*, D.I. 75 at 43-44). If Velcera's retail partners are permitted to sell their remaining inventory of Pet Armor Plus products in the U.S. throughout the peak of the flea and tick season, it will be devastating to Merial. Such infringing sales have been, and will be, particularly harmful to Merial given that PetArmor Plus is offered at about the price of Merial's Frontline Plus® and the PetArmor Plus products are packaged to mimic the packaging of Merial's Frontline Plus® (D.I. 75, at 43).

Any subsequent monetary judgment will not make Merial whole, particularly since it is highly unlikely that Merial will be able to collect from either Velcera or Cipla the full amount of its lost profits—damages that will likely be in the tens of millions of dollars. Indeed, Velcera has

not been required to post a bond, even though it is a small start-up company with limited assets (*see, e.g.*, D.I. 66 (5-17-11 Tr.) at 330:1-7 and 15-24). Moreover, because Velcera is selling its products at half the price of Frontline Plus® (*see, e.g.*, D.I. 75 at 16, ¶ 21; *id.* at 301:25-302:9), Velcera cannot earn the same amount of profits that Merial will have lost in Frontline Plus® sales. Further, by the time any monetary judgment is rendered, the profits that Velcera has made from its infringing sales will likely have already been distributed to its investors. In the end, it is highly unlikely that Merial will be able to collect any significant monetary judgment from Velcera.[2]

## CONCLUSION

Because it is the only means of preventing the irreparable harm that will result to Merial if Velcera's retail partners are permitted to exhaust the existing large inventories of PetArmor Plus, Merial respectfully requests that the Court exercise its authority to require Velcera to issue a recall of PetArmor Plus inventories regardless of where such products are being stored. Merial also requests that this Court clarify that the remedy section of its June 21, 2011, Order requires Velcera to, in good faith, do everything within its ability to seize any existing U.S. inventory of the infringing products, including recalling such products from its retail partners.

Respectfully submitted, this 22nd day of August, 2011.

*/s/ John W. Cox*
John W. Cox, Ph.D., Esq.
ALSTON & BIRD LLP

---

[2] Likewise, because Cipla is a foreign company and has intentionally tried to limit its assets in the United States, Merial may have difficulties collecting any monetary judgment from Cipla. Also, Velcera's CEO testified that Velcera's "share is greater than [Cipla's] share by a significant margin" and Cipla's costs have to be a "lot bigger" (D.I. 66 (5-17-11 Tr.) at 309:8-11).

| | |
|---|---|
| Judy Jarecki-Black, Ph.D., Esq.<br>(judy.jarecki@merial.com)<br>Georgia Bar No. 801698<br>MERIAL LIMITED<br>3239 Satellite Blvd.<br>Duluth, Georgia  30096-4640<br>Tel.: (678) 638-3805<br>Fax: (678) 638-3350 | Edward D. Tolley, Esq.<br>(etolley@mindspring.com)<br>Georgia Bar No. 714300<br>COOK NOELL TOLLEY & BATES LLP<br>304 East Washington Street<br>P.O. Box 1927<br>Athens, GA 30603-1927<br>Tel.: (706) 549-6111<br>Fax: (706) 548-0956 |
| J. Patrick Elsevier, Ph. D., Esq.<br>(jpelsevier@jonesday.com)<br>Georgia Bar No. 246694<br>JONES DAY<br>12265 El Camino Real<br>Suite 200<br>San Diego, California 92130-4096<br>Tel.: (858) 314-1200<br>Fax.: (858) 314-1150 | Frank G. Smith, III, Esq.<br>(frank.smith@alston.com)<br>Georgia Bar No. 657550<br>John W. Cox, Ph.D., Esq.<br>(john.cox@alston.com)<br>Georgia Bar No. 134059<br>Matthew W. Howell, Esq.<br>(matthew.howell@alston.com)<br>Georgia Bar No. 607080<br>ALSTON & BIRD LLP<br>One Atlantic Center<br>1201 West Peachtree Street<br>Atlanta, Georgia 30309-3424<br>Tel.: (404) 881-7000<br>Fax: (404) 881-7777 |

*Counsel for Plaintiffs Merial Limited and Merial SAS*