UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| BASF AGRO B.V., MERIAL LIMITED and MERIAL SAS<br><br>      Plaintiffs,<br><br>v.<br><br>CIPLA LIMITED, *et al.*<br><br>      Defendants<br><br>and<br><br>VELCERA, INC. and FIDOPHARM, INC.,<br><br>      Intervenors. | Case No. 3:07-CV-00125-CDL |

## INTERVENORS' BRIEF IN RESPONSE TO PLAINTIFF'S PROPOSED DAMAGES DISCOVERY SCHEDULE

Intervenors Velcera, Inc. ("Velcera") and FidoPharm, Inc. ("FidoPharm") (collectively "Velcera") respectfully submit this brief in response to Plaintiff Merial, Ltd.'s ("Merial") proposed schedule for the damages and sanctions phase of this case (*see* DE 105). The parties have met and conferred extensively in advance of the September 28, 2011 Scheduling Conference and have been unable to reach agreement.

Velcera's proposed schedule affords the parties sufficient time to conduct discovery in what will be a complex and fact intensive damages proceeding. In contrast, the schedule submitted by Merial is unreasonable and seeks to accelerate the damages proceedings while Velcera's appeal to the United States Court of Appeals for the Federal Circuit remains pending, an appeal that could entirely moot the damages proceedings Merial is so eager to complete in short order. Indeed, all appeal briefing is now completed, and the Federal Circuit will likely

schedule the oral argument for early December 2011 or early January 2012.

Particularly given the advanced stage of the appeal process, it makes little sense for the parties to spend hundreds of thousands of dollars litigating complex damages and sanctions issues in an expedited proceeding.  It is axiomatic that a federal court has broad discretion to stay proceedings in the interests of "economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Coast Fed. Bank, FSB v. United States*, 49 Fed. Cl. 11, 15 (2001).  The common sense principle underlying the exercise of this authority is that, in some circumstances, it simply does not make sense to undertake costly proceedings on matters that could be mooted by resolution of an issue on appeal.  *See id.*  This principle is reflected in the general equitable standard for staying damages proceedings pending appeal—a standard that is different, and easier to meet, than the standard for staying execution of a judgment pending appeal.  *Compare Coast Fed. Bank*, 49 Fed. Cl. at 15 (holding that precedents concerning "stay[s] of the court's judgment pending appeal" were "inapposite" regarding motion for stay of damages proceedings) *with* Order of June 30, 2011 (DE 89) (addressing factors for staying execution of judgment pending appeal); *Isaly Co. v. Kraft, Inc.*, 622 F. Supp. 62, 62 (M.D. Fla. 1985) (staying damages proceedings pending appeal notwithstanding trial judge's statement that, "[h]aving decided for Plaintiff on the facts and the law, I am obviously not disposed to find that the Defendant now enjoys a likelihood of success on the appeal").

Settled Federal Circuit precedents in patent cases reflect a strong policy favoring the resolution of liability appeals before damages are assessed.  *See, e.g., Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1580 (Fed. Cir. 1994) (emphasizing that appellate resolution of

liability question would "avoid a burdensome determination of damages").[1]  Indeed, the Federal Circuit has observed that Congress enacted some subsections of 28 U.S.C. § 1292, which would have allowed interlocutory appeal of the Court's contempt judgment and injunction absent the Court's Rule 54(b) certification, specifically to "permit a stay of a damages trial" pending appeal of liability issues and other issues in infringement actions.  *In re Calmar, Inc.*, 854 F.2d 461, 464 (Fed. Cir. 1988); *accord SRI Int'l, Inc. v. Adv. Tech. Labs., Inc.*, 45 F.3d 443, No. 93-1074, 1994 WL 712487, at *1 (Fed. Cir. Dec. 21, 1994) ("The purpose and rationale of § 1292(c)(2)—to permit a district court to stay a damages trial pending the outcome of an appeal on the merits— has been clearly stated by both Congress and the Supreme Court.  This court has heard those clear statements.").  All of these cases stand for the general proposition that expensive and time-consuming damages determinations in patent cases should be deferred where a pending appeal could "vitiate the [] proceedings below."  *Coast Fed. Bank, FSB v. United States*, 49 Fed. Cl. 11, 15 (2001) (internal quotation marks and citation omitted).

In light of this abundant authority and the impending oral argument at the Federal Circuit, Velcera respectfully submits that an equitable stay of the damages and sanctions phase of the proceedings pending appeal is warranted here.  Such a stay would conserve substantial resources of the parties and the Court, and would not unfairly prejudice Merial.  Indeed, Velcera ceased all sales and advertising of its PetArmor® Plus products before the expiration of the 60-day stay entered by this Court, and is now selling only its mono (fipronil-only) products.  Accordingly, no additional damages will accrue before the Federal Circuit decides the appeal.

---

[1]  *See also ION, Inc. v. Sercel, Inc.*, No. 5:06-CV-236, 2011 WL 537858, at *1-2 (E.D. Tex. Feb. 16, 2011) (staying proceedings on supplemental damages claims in patent case pending resolution of appeal); *Schlegel Mfg. Co. v. King Aluminum Corp.*, 381 F. Supp. 649, 654-55 (S.D. Ohio 1974), *aff'd*, 525 F.2d 775 (6th Cir. 1975) (ordering stay of damages accounting pending appeal of contempt order resulting from violation of injunction against patent infringement).

If, however, the parties are to proceed with full-blown fact and expert discovery on damages and sanctions issues during the pendency of the appeal, they should do so within a reasonable schedule that allows for a fair opportunity to develop their respective cases and present helpful evidence and legal arguments to the Court.  As detailed below, Velcera's proposed schedule, while expedited, would provide that opportunity.  Merial's extremely compressed schedule, on the other hand, would not, and would unnecessarily impose substantial burden on Velcera and the Court.  The parties' respective proposed schedules are as follows:

| Event | Merial's Proposed Date (D.I. 105) | Velcera's Proposed Date |
|---|---|---|
| Written Discovery[2] | 9/19/2011 | 9/29/2011 (day after conference) |
| Written Responses and Objections to Written Discovery Served | 10/11/2011 | 10/24/2011 |
| Velcera/Cipla to Serve Accounting of All Sales of Veterinary Products Containing Fipronil and Methoprene Manufactured by Cipla | 10/19/2011 (as ordered by Court) | 10/19/2011 (as ordered by Court) |
| Document Production in Response to Written Discovery Exchanged | 10/19/2011 | Rolling production beginning 10/24/11; complete by 11/11/2011 |
| Depositions of Fact Witnesses | 10/24/2011 – 11/11/2011 | 11/18/2011 – 1/6/2012 |
| Disclose Experts | 11/11/2011 | Burden of Proof: 11/11/2011  Rebuttal:  11/21/11 |
| Close of Fact Discovery | -- | 1/6/12 |
| Expert Reports Exchanged | 11/28/2011 | Burden of Proof: 1/13/2012 |

---

[2] Without first seeking leave of court, on Friday, September 23, 2011, Merial served Velcera and FidoPharm with 13 interrogatories and 32 requests for production.  Copies of Merial's burdensome discovery requests are attached hereto as Exhibits A and B, respectively.

| Event | Merial's Proposed Date (D.I. 105) | Velcera's Proposed Date |
|---|---|---|
| Rebuttal Expert Reports Exchanged | -- | Rebuttal:  1/27/2012 |
| Expert Depositions | 12/5/2011 – 12/9/2011 | 2/2/2012 – 2/9/2012 |
| Damages Hearing | TBD by Court | TBD by Court |

Merial has recently abandoned its earlier-stated lost profits claim and now purports to seek a reasonable royalty and disgorgement of any profits Velcera may have earned on the sale of PetArmor® Plus products.  (*See* Pls.' Reply in Supp. of Mot. for a Scheduling Conference at 2 (Doc. No. 105).)

Determining a reasonable royalty is a fact intensive task that will require not only significant discovery from the parties and third parties, but also extensive financial and expert analysis.  *See Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1447 (Fed. Cir. 1990) ("We recognize that an assessment of a royalty based on a fictional negotiation is not a simple task. 'Determining a fair and reasonable royalty is often . . . a difficult judicial chore, seeming often to involve more the talents of a conjurer than those of a judge.'") (citation omitted).  Establishing a reasonable royalty will require the parties to take discovery regarding a variety of issues including, but not limited to, the structure of the relevant market, the effect of distinct market channels on calculating any reasonable royalty, the identity and acceptability of a variety of non-infringing substitutes to Merial's Frontline® Plus product, and financial information regarding the parties' respective sales, costs and profit margins. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  Under *Georgia Pacific*, courts generally consider the following fifteen non-exclusive factors:

1.      The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2.      The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3.      The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.      The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5.      The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6.      The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7.      The duration of the patent and the term of the license.

8.      The established profitability of the product made under the patent; its commercial success; and its current popularity.

9.      The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10.      The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11.      The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12.      The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.      The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the

manufacturing process, business risks, or significant features or improvements added by the infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee- who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

318 F. Supp. at 1120. Therefore, conducting a reasonable royalty analysis here will be challenging and complicated, particularly if the proceedings are unreasonably compressed into the short time period proposed by Merial.

Merial's proposed schedule is unworkable for several reasons. First, Merial unreasonably seeks to accelerate document and deposition discovery. Under Merial's schedule, Velcera would be required to undertake the substantial effort of collecting, reviewing and producing all responsive documents less than three weeks after receipt of Merial's 32 document requests. Given the breadth of Merial's improper document requests, document collection and production in these proceedings will be no small task. Then, Merial would have fact depositions begin a mere five days after documents have been produced and would afford a total of less than three weeks to complete all fact depositions. Compressing fact discovery to such an extreme extent will place enormous burdens on the parties and will likely result in more discovery disputes that the parties will not have sufficient time to negotiate and attempt to resolve without the Court's assistance. Velcera's proposed schedule, while still accelerated, will provide the parties with sufficient time to analyze the document discovery, appropriately tailor third party discovery, and allow the parties to discover all of the information necessary to perform the

complex damages analyses mandated by the case law.

Second, Merial's schedule offers no formal or even practical ability to seek third party discovery, as fact depositions would be closed less than three weeks after Velcera receives Merial's document production. Third party discovery will be absolutely necessary to perform a proper reasonable royalty analysis in this case. This case does not present the classic damages scenario where the parties agree that their products compete for the same customers in the same sales channels. Instead, the opposite is true – Merial purports to avoid the <u>only</u> distribution channel where PetArmor® Plus is sold (at retail) in favor of distribution through the veterinary channel. Due to this market segmentation, it will be necessary for the parties to take discovery regarding these distinct channels of distribution in the course of attempting to "approximat[e] the market as it would have hypothetically developed absent the [alleged] infringement." *Riles v. Shell Exploration and Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002). Third party discovery relating to sales of Frontline® Plus into the over-the-counter market, and Merial's enforcement (or lack thereof) of its purported veterinary-only distribution policies, will also be needed. Under Merial's proposed schedule, such third party discovery will be practically impossible, as Velcera will have less than three weeks to identify relevant third party targets from Merial's document production, issue subpoenas, and take document and deposition discovery from those third parties before the close of fact depositions in early November. In contrast, Velcera's proposed schedule permits the parties sufficient time to seek this necessary third party discovery and avoids placing undue burdens on third parties to produce documents and deposition witnesses within the proposed truncated fact deposition period.

Third, Merial's proposed schedule offers no provision for rebuttal expert reports, instead calling for a simultaneous exchange of reports. Merial has the burden of proof on all damages

issues in this case, and its expert report setting forth Merial's damages positions and the bases

therefore should be served first.  The damages experts retained by Cipla and Velcera can then

serve reports that are responsive to Merial's expert report.  Allowing for such rebuttal reports

will crystallize the damages issues for the parties and the Court, while Merial's requirement of a

simultaneous exchange will lead to expert reports that are like ships passing in the night.

Finally, there are simply no exigent circumstances here to warrant the accelerated

schedule proposed by Merial.  As noted above, Velcera ceased all sales of PetArmor® Plus

before the expiration of the 60-day stay.  Merial cannot credibly argue that litigating the damages

and sanctions phase of these proceedings in just over four months rather than just over two

months will unfairly prejudice Merial.

For the foregoing reasons, if the damages and sanctions phase of the case is to go forward

during the remainder of the appeal process, Velcera and FidoPharm respectfully request that the

Court enter Intervenors' proposed damages discovery schedule.

Respectfully submitted this 28th day of September, 2011.


/s/ Michael S. French
Michael S. French, Esq.
Georgia Bar No. 276680
mfrench@wargofrench.com
WARGO & FRENCH LLP
999 Peachtree Street, NE
26th Floor
Atlanta, Georgia  30309
(404) 853-1500

**PAGE, SCRANTOM, SPROUSE,
TUCKER & FORD, P.C.**

William L. Tucker
Ga. Bar No.: 718050
James C. Clark, Jr.
Ga. Bar No.: 127145
Thomas F. Gristina
Ga. Bar No.: 452454

Kirsten C. Stevenson
Ga. Bar No.: 801101
1111 Bay Avenue, Third Floor Columbus, Georgia
31901
(706) 324-0251

**COOLEY LLP**
Jonathan G. Graves (of counsel)
Va. Bar No.: 46136
Phillip E. Morton (of counsel)
Va. Bar No.: 71299
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, Virginia 20190
Telephone: (703) 456-8000
Facsimile: (703) 456-8100

Tryn T. Stimart (of counsel)
DC Bar No.: 498475
777 6th Street NW, Suite 1100
Washington, DC 20001
Telephone: (202) 842-7800
Facsimile: (202) 842-7899

*Attorneys for Intervenors Velcera,*
*Inc. and FidoPharm, Inc.*

10

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

BASF AGRO B.V., MERIAL LIMITED and
MERIAL SAS

      Plaintiffs,

v.

CIPLA LIMITED, *et al.*

      Defendants

and

VELCERA, INC. and FIDOPHARM, INC.,

      Intervenors.

Case No. 3:07-CV-00125-CDL

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of September, 2011, I electronically filed the foregoing Intervenors Brief in Response to Plaintiff's Proposed Damages Discovery Schedule. I also certify that the foregoing document is being served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Thomas F. Gristina
William L. Tucker
Ga. Bar No.: 718050
James C. Clark, Jr.
Ga. Bar No.: 127145
Thomas F. Gristina
Ga. Bar No.: 452454
Kirsten C. Stevenson
Ga. Bar No.: 801101
Page, Scranton, Sprouse,
Tucker & Ford,P.C.
1111 Bay Avenue, Third Floor Columbus,
Georgia 31901
(706) 324-0251

*Attorneys for Intervenors Velcera, Inc. and FidoPharm, Inc.*