UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

BASF AGRO B.V., MERIAL LIMITED,
and MERIAL SAS

    Plaintiffs,

v.

CIPLA LIMITED, *et al.*,

    Defendants, and

VELCERA, INC. and FIDOPHARM, INC.

    Intervenors.

Civil Case No. 3:07-cv-00125-CDL

**VELCERA'S SUPPLEMENTAL MEMORANDUM
OPPOSING MERIAL'S CONTEMPT MOTION**

Pursuant to the Court's instructions at the May 1 telephonic status conference, Velcera submits this supplemental memorandum to address the "legal issue regarding the interpretation of the" Court's injunction against Velcera, including the "'concerted activity' requirement under the *Additive Controls* case." Ex. 1 (May 1, 2012 Hr'g Tr.) at 13.

**INTRODUCTION**

The Court's modified 2011 injunction is, in fact, "clear." D.I. 175 at 2. And a plain reading of that injunction requires that Merial's contempt motion be denied. The Court expressly "limit[ed] the specific injunctive relief against Velcera to its conduct *in concert with Cipla*." *Id.* (citing *Additive Controls & Meas. Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1395-96 (Fed. Cir. 1996)). *Additive Controls*, in turn, held that "those who act in concert with an enjoined party may be held in contempt, ***but only for assisting the enjoined party in violating the injunction***." *Additive Controls*, 96 F.3d at 1395 (emphasis added). The Court further

emphasized that its limited 2011 injunction applies only "*[f]rom the date of the Court's June 21, 2011 Order going forward.*"  D.I. 175 at 2.  The injunction thus applies only to conduct by Velcera since June 21, 2011, that assists Cipla in violating the underlying 2008 default injunction.

This natural reading of the 2011 injunction warrants summary denial of Merial's contempt motion as a matter of law for two independent, but related reasons:

> <u>First</u>, Merial does not even allege that Velcera is "*assisting the enjoined party [Cipla] in violating the injunction*," as required by *Additive Controls*, 96 F.3d at 1395.
>
> <u>Second</u>, Merial concedes that it has no "evidence that Cipla and Velcera have acted in concert with each other in developing [Velcera's] new product after the date of the [2011] injunction order[.]"  Ex. 1 (May 1, 2012 Hr'g Tr.) at 8:20-9:2.

While the Court should adopt both arguments, accepting either one would be sufficient to deny Merial's contempt motion, thus mooting the requested discovery and evidentiary hearing.  *See id.* at 10:3-11, 11:10-13 (Merial admits that legal "issue can be decided without discovery").

Velcera's reading of the 2011 injunction is not only consistent with its clear language, it goes as far as the law allows.  This Court's contempt power is "remedial rather than punitive in nature" and thus is limited to "coerc[ing] compliance with" the underlying 2008 default injunction against Cipla.  *See RMT, Inc. v. Bhat Indus., Inc.*, 1999 WL 197185, at *3 (Fed. Cir. Apr. 5, 1999).  Velcera was not a party to this case at the time of that injunction and never had an opportunity to be heard on the merits of the infringement claim against Cipla.  Thus, there is nothing remedial about broadly construing the 2011 injunction as barring Velcera from marketing a product that does not even benefit Cipla, much less cause Cipla to violate this Court's orders.

Merial has no logical or legal basis to read the injunction as requiring Velcera to "start from scratch" by developing a new product without *any* assistance (pre- or post-injunction) from

2

Cipla. Mem. 14. But even if one could read the 2011 injunction as broadly as Merial does (which Velcera disputes), this still would not be enough to support a finding of contempt. Based on due process concerns, "all omissions or ambiguities" in an injunction "redound to the benefit of the person charged with contempt" and must be "resolved in favor of [the enjoined party]." *Abbott Labs. v. TorPharm, Inc.*, 503 F.3d 1372, 1383 (Fed. Cir. 2007).

There is thus no need to proceed further with Merial's contempt motion. The Court should summarily deny that motion and find Merial's discovery demands moot. To the extent Merial wishes to pursue a claim for infringement, it should do so in the proper setting—where Velcera will have a full and fair opportunity to challenge the merits of such a claim.

## ARGUMENT

**I.     To Prove Contempt, Merial Must Show That Velcera Has Taken Action Since June 21, 2011, That Assists Cipla In Violating The 2008 Default Injunction.**

The Court's orders at issue all arise out of a default judgment of patent infringement against a third party—Cipla. That final judgment enjoined Cipla, "as well as those persons and entities *in active concert* with [Cipla] who have notice," from infringing the '329 patent. D.I. 18 at 2 (emphasis added). As Merial concedes, Velcera was not a party at the time of that judgment. Ex. 2 (May 16, 2011 Reply Mem.) at 6. In fact, Merial has never sued Velcera for infringement. And Velcera has not yet had an opportunity to defend against such an action by arguing, for example, that Merial's patent is invalid. The Court thus has the limited power to enjoin Velcera *only* if it aids and abets *Cipla's* violation of the default judgment.

Enjoining a third-party that had no opportunity to defend against the underlying injunction is extreme. Thus, as the Court appropriately found during the contempt hearing, "Merial has the burden of proving by clear and convincing evidence [both] that *Cipla violated* the Court's March 6, 2008 Order *and* that Velcera acted in concert with Cipla in the violation of

3

the Order." D.I. 75 at 20 (emphasis added); *see also* Ex. 3 (May 16, 2011 Hr'g Tr.) at 18:21-19:17 (Court: "The way I see it, it's . . . whether CIPLA violated it. And then it's whether Velcera aided and abetted or acted in concert to allow CIPLA to violate it.").

The Court ultimately found Velcera in contempt for acting "in concert with Cipla" to "aid and abet" Cipla's violation of the 2008 order. D.I. 75 at 19. Solely to coerce future compliance with that order—i.e., the default judgment against Cipla—the Court specifically enjoined Velcera from taking certain action "*in concert with Cipla*" "*[f]rom the date of the Court's June 21, 2011 Order going forward.*" D.I. 175 at 2. To be clear, this was *not* an injunction prohibiting Velcera from infringing a patent, the type of injunction issued against Cipla and addressed in *TiVo Inc. v. Echostar Corp.*, 646 F.3d 869, 877 (Fed. Cir. 2011). Instead, as the Court expressly held, the order "limit[ed] the specific injunctive relief against Velcera to its conduct *in concert with Cipla*." D.I. 175 at 2 (citing *Additive Controls*, 96 F.3d at 1395-96) (emphasis added).

The meaning of "in concert with" is informed by the Court's citation to *Additive Controls*. There, the Federal Circuit held that "those who act in concert with an enjoined party may be held in contempt, but **only for assisting the enjoined party in violating the injunction**." 96 F.3d at 1395 (emphasis added). As the *Additive Controls* court explained, "the extraordinary remedy of enjoining non-parties must be reserved for extraordinary cases, in which the activities of third parties threaten to undermine the court's ability to render a binding judgment in the case before it." *Id.* at 1396. The court thus "prohibit[ed] the district court from entering an injunction against a non-party that regulates the non-party's conduct *independent of any complicity with an enjoined party*," and explained that "[t]his prohibition stems from the basic principle that an injunction ordinarily cannot be imposed on a non-party that has not had the opportunity to

contest its liability." *Id.* at 1397 (emphasis added); *see also id.* at 1395-96 ("Having a relationship to an enjoined party of the sort set forth in Rule 65(d) exposes a non-party to contempt for assisting the party to violate the injunction, but does not justify granting injunctive relief against the non-party in its separate capacity.").

This Court's modified 2011 injunction, particularly when read with the unambiguous holding in *Additive Controls*, does "not subject [Velcera] to being enjoined or held in contempt with respect to [its] independent conduct." *Id.* at 1395. On the contrary, Velcera is "entitled to contest [its] liability [for patent infringement] and the appropriateness of equitable relief in a lawsuit in which [it is] named as [a] part[y]." *Id.* at 1397; *see also E.A. Renfroe & Co., Inc. v. Moran*, 338 F. App'x 836, 838-40 (11th Cir. 2009) ("[W]e conclude that [third party] was not shown to have been an aider or abettor of the [defendants]. Therefore, [third party] is not subject to the jurisdiction of the district court nor its judgment of civil contempt.") (citing *Additive Controls*). The Court's injunction—according to its plain language—thus applies only if Velcera takes certain action "[f]rom the date of the Court's June 21, 2011 Order going forward . . . *in concert with Cipla*." D.I. 175 at 2. And this language is subject to only one interpretation: Velcera is enjoined from taking action since June 21, 2011, that assists *Cipla* in violating the underlying 2008 default injunction. *See Additive Controls*, 96 F.3d at 1395 (holding that "naming nonparties in an injunction cannot expand the nonparties' liability . . . , but 'merely makes explicit as to them that which the law already implies'") (citation omitted).

This reading is consistent with positions taken by Merial in *prior* filings. Merial previously addressed the meaning of the term "in concert with," explaining that "[a] party may act in concert with another entity under two theories: (i) either based on legal identity or (ii) an aiding and abetting standard." Ex. 2 (May 16, 2011 Reply Mem.) at 4. Merial then eliminated

the first theory, admitting that "Merial does not, and has not, alleged that Velcera shares a legal identity with Cipla." *Id.* at 6.  To support its sole theory of liability under an aiding and abetting standard, Merial quoted *Additive Controls* for the proposition that "those who act in concert with the enjoined party may be held in contempt . . . for *assisting* the enjoined party in violating the injunction." *Id.* at 5 (quoting *Additive Controls*, 96 F.3d at 1395) (emphasis added).  According to Merial's own representations to the Court, therefore, the Rule 65 language in the 2011 injunction barring Velcera from acting "in concert with Cipla" should be construed as limiting the injunction to conduct that assists Cipla in violating the injunction.  Velcera agrees.

**II.   Merial Is Improperly Asking The Court To Read The Date Restriction And "In Concert With" Term Out Of The 2011 Injunction.**

Despite its prior representations to the Court, Merial is now arguing that the 2011 injunction—which includes this same "in concert with" language—extends far beyond assisting Cipla in violating this Court's orders.  According to Merial, *without any citation to authority*, this injunction actually requires Velcera to "start from scratch" and unlearn what it gained from the development of its original PetArmor® Plus product—regardless of whether Velcera has assisted Cipla in violating the injunction after its issuance.  Mem. 14.  But that is not what the injunction says.  That is not what the law says.  And that is not what Merial itself has said.

Merial has now reversed course and, at the status conference, revealed its true goal:  read the "*in concert with Cipla*" language out of the order entirely—language the Court added to the injunction, in italics, when it modified the order:

> THE COURT: The focus of y'all's argument is, if this is the same product that Velcera developed with CIPLA, then they should be prohibited from selling it because of the injunction *even if what they are doing now is **not** done in concert with CIPLA*.  Ms. Black or Mr. Elsevier, am I understanding your argument?
>
> MR. ELSEVIER [Merial's counsel]: *Yes, Your Honor.*

6

Ex. 1 (May 1, 2012 Hr'g Tr.) at 10:17-24 (emphasis added).  Merial admits that it has no evidence that Cipla has even worked with Velcera on its new product since the 2011 injunction.  *Id.* at 8:20-9:2.  For Merial's contempt theory to succeed, therefore, it must also convince the Court to ignore the phrase "From the date of the Court's June 21, 2011 Order going forward"—again, language the Court italicized when it modified the injunction.  Merial's counsel admitted as much:

> THE COURT: ... That's my impression of Merial -- the thrust of Merial's argument, that all you have got to show is that the product that Velcera is now selling was one that was developed in concert with CIPLA, *even if that concerted activity was **before** the injunction.*
>
> MR. TOLLEY [Merial's counsel]: This is Edward Tolley. *I think you are exactly right....*

*Id.* at 9:14-23.  Merial's reading of the injunction is untenable.  The Court should confirm that its injunction means what it says—namely, Velcera cannot act "in concert with Cipla" "[f]rom the date of the Court's June 21, 2011 Order" to assist Cipla in violating the 2008 default injunction.  D.I. 175 at 2.

Merial has conceded that it has no evidence to support a showing that Velcera has violated this injunction when so construed.  Ex. 1 (May 1, 2012 Hr'g Tr.) at 8:20-9:2; *see also* D.I. 189 Exs. B (D. Steadman Decl.), C (D. Petrick Decl).  It has further conceded that it would not even have a basis to request discovery if the Court finds that "the concerted activity . . . that Velcera was prohibited in engaging in [] has to occur after the date of the injunction."  *Id.* at 10:3-11; *see also Arthur v. King*, 500 F.3d 1335, 1338 (11th Cir. 2007) ("[G]ood cause for discovery cannot arise from mere speculation."); *T&M Dists., Inc. v. United States*, 185 F.3d 1279, 1285 (Fed. Cir. 1999) (holding that party cannot "obtain discovery with just bald assertions and speculation of wrongful conduct").  Therefore, the contempt motion and discovery requests should be denied based on a plain reading of the 2011 injunction.  *See Thomas v. Blue*

7

*Cross & Blue Shield Ass'n*, 594 F.3d 814, 821 (11th Cir. 2010) ("On a contempt motion, the movant bears the initial burden of proving, by clear and convincing evidence, the defendant's noncompliance with a court order.").

Importantly, denying Merial's contempt motion would not leave it without a potential remedy. On the contrary, it simply requires Merial to defend its patent and infringement theory in the proper forum. To paraphrase the Federal Circuit in *Additive Controls*: "If [Merial] wishes to obtain permanent injunctive relief against [Velcera] based on [its] independent activities, [Merial] cannot do so by seeking an injunction against them in a case to which they are not parties; it must, instead, validly serve them and obtain an adjudication of infringement against them." 96 F.3d at 1397. Merial hopes to avoid that step, perhaps because it fears the outcome.

**III.    Merial's Broad Reading Of The 2011 Injunction Contravenes Controlling Law.**

Merial's construction of the Court's 2011 injunction not only ignores the plain language of the order, it also fails as a matter of law for three independent reasons:

<u>First</u>, as a contempt sanction, the 2011 injunction cannot be broader than the underlying Court order—i.e., the 2008 default injunction against Cipla—because "the purpose of a civil contempt sanction is to coerce compliance with the court order." *RMT*, 1999 WL 197185 at *3.[1] This presumably is why the Court noted that the purpose of its 2011 order is to "remediate" any violation of the 2008 default injunction against Cipla. Ex. 3 (May 16, 2011 Hr'g Tr.) at 14:4-16.

Merial thus invites reversible error by arguing that the 2011 injunction reaches beyond the scope of the original default injunction. *See RMT*, 1999 WL 197185, at *3 (vacating

---

[1] *See also Collins Licensing, LP v. Am. Tel. & Tel. Co.*, 1993 WL 452261, at *5 (Fed. Cir. Nov. 5, 1993) ("A civil contempt sanction is instead intended 'to coerce the contemnor into compliance with a court order[.]'"); *Am. Trucking Ass'n, Inc. v. ICC*, 728 F.2d 254, 255 (5th Cir. 1984) ("Civil contempt is coercive rather than punitive. It is intended to make a recalcitrant party comply with an affirmative command of the court.").

contempt injunction as "too broad" and "not coercive but punitive in nature").[2] Velcera intervened after final judgment against Cipla for the limited purpose of participating in the original contempt proceedings and, therefore, never had an opportunity to participate in the merits of this case. *See Ensley Branch, NAACP v. Seibels*, 31 F.3d 1548, 1578 (11th Cir. 1994) ("[I]ntervenors, unlike the original parties, are not estopped from collaterally attacking the validity of the decree as originally adopted"); *see also* Ex. 4 (Jun. 8, 2011 Hr'g Tr.) at 174:18-175:9; Ex. 5 (Mot. to Intervene). Any reading of the 2011 injunction as barring conduct by Velcera that does ***not*** aid and abet a violation by Cipla would be punitive and deny Velcera due process. *See Irvin v. Griffin Corp.*, 808 F.2d 802, 810 (11th Cir. 1987) ("It is well settled that due process is denied when a litigant who was not a party to, or whose interests were not represented in, the earlier proceeding is collaterally estopped from litigating an issue resolved in the prior proceeding."); *Additive Controls*, 96 F.3d at 1395 ("Because the appellants . . . never had an opportunity to contest the findings of liability . . . , they are not subject to being enjoined or held in contempt with respect to their independent conduct. . . .").

Second, Velcera cannot be held in contempt for acting in concert with Cipla "if that concerted activity was before the injunction," as Merial insists (Ex. 1 at 9:14-20), because "an injunction is limited to prospective relief." *Alabama v. U.S. Army Corps of Engs.*, 424 F.3d 1117, 1133 (11th Cir. 2005).[3] Merial has cited no authority to the contrary. It thus has no legal

---

[2] *See also Perez v. Dansbury Hosp.*, 347 F.3d 419 (2d Cir. 2003) (vacating injunction that was "not designed to ensure compliance with the Decree, but rather improperly expands its terms and imposes obligations on defendants that are beyond its scope."); *Mo. Hosp. Ass'n v. Air Conservation Comm'n of State of Mo.*, 900 S.W.2d 263, 266-67 (Mo. App. 1995) ("[A]n expanded injunction is not a recognized sanction in a civil contempt proceeding. . . . In issuing the second injunction in the contempt proceedings, the trial court exceeded its authority . . . . [because] it may exercise its contempt power only to compel compliance with obligations arising from a pre-existing judgment.").

[3] *See also United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333 (1952) ("The sole function of an action for injunction is to forestall future violations."); *Alabama v. U.S. Army Corps of Engs.*, 424 F.3d 1117, 1133 (11th Cir. 2005) (noting that "an injunction is limited to prospective relief"); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010) (noting that "injunctions are tools for prospective relief designed to alleviate future harm").

basis to ignore the phrase "[f]rom the date of the Court's June 21, 2011 Order going forward." D.I 175 at 2.

Finally, even if the Court's injunction were not clear on its face (it is), at the very most, Merial has raised an ambiguity in the scope of the injunction. But ambiguity does not help Merial here. "[A]ll omissions or ambiguities" in an injunction "redound to the benefit of the person charged with contempt" and must be resolved in that party's favor. *Abbott Labs. v. TorPharm, Inc.*, 503 F.3d 1372, 1383 (Fed. Cir. 2007) (citations omitted). And the court must "construe *any* ambiguities or uncertainties . . . in a light favorable to the person charged with contempt." *Ga. Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007) (emphasis added).

The Supreme Court has stated that the "basic principle built into [Federal Rule of Civil Procedure] 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 444 (1974). For this reason, courts have repeatedly held that, when an injunction could be read to cover the accused conduct, but also could be interpreted to *not* cover the accused conduct, a finding of contempt is inappropriate. *See, e.g.*, *United States v. Saccoccia*, 433 F.3d 19, 29 (1st Cir. 2005) (holding that injunction that "could have been interpreted in various ways" could not give rise to finding of contempt); *Gilday v. Dubois*, 124 F.3d 277, 285-86 (1st Cir. 1997) (reversing contempt finding because decree was "susceptible to various reasonable interpretations"); *Gates v. Shinn*, 98 F.3d 463, 467-72 (9th Cir. 1996) (holding contempt finding improper when consent decree was not sufficiently specific); *New York Tele. Co. v. Comms. Workers of Am.*, 445 F.2d 39, 48 (2d Cir. 1971) (holding that injunction barring "any strike" by union was ambiguous when applied to a strike issue other than issue leading to original order and did not give rise to finding of contempt); *Int'l Longshoremen's Ass'n, Local 1291 v.*

*Philadelphia Marine Trade Ass'n*, 389 U.S. 64 (1967) (holding that injunction requiring union to comply with an arbitrator's award was ambiguous and therefore reversing contempt finding).

## CONCLUSION

For the reasons herein, and the reasons set forth in Velcera's Opposition (D.I. 189), all of Merial's motions should be denied and its requests for discovery denied as moot.

Dated: May 3, 2012

Respectfully Submitted,

  s/ James C. Clark, Jr.

| | |
|---|---|
| Michael S. French | William L. Tucker |
| (mfrench@wargofrench.com) | (wlt@psstf.com) |
| Ga. Bar No. 276680 | Ga. Bar No. 718050 |
| 999 Peachtree Street, NE | James C. Clark, Jr. |
| 26th Floor | (jcc@psstf.com) |
| Atlanta, Georgia 30309 | Ga. Bar No. 127145 |
| Tel.: (404) 853-1500 | Thomas F. Gristina |
| | (tfg@psstf.com) |
| | Ga. Bar No. 452454 |
| | Kirsten C. Stevenson |
| | (kcs@psstf.com) |
| | Ga. Bar No. 801101 |
| | 1111 Bay Avenue, Third Floor |
| | Columbus, GA 319021 |
| | Tel: (706) 324-0251 |

George C. Lombardi (of counsel)
(glombardi@winston.com)
Maureen L. Rurka (of counsel)
(mrurka@winston.com)
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL  60601-9703
Tel.: (312) 558-5600

Charles B. Klein (of counsel)
 (cklein@winston.com)
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel.: (202) 282-5977

*Counsel for Intervenors Velcera, Inc. and FidoPharm, Inc.*

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OFGEORGIA
ATHENS DIVISION

| | |
|---|---|
| BASF AGRO B.V., MERIAL LIMITED and MERIAL SAS<br><br>    Plaintiffs,<br><br>v.<br><br>CIPLA LIMITED, *et al.*<br><br>    Defendants<br><br>and<br><br>VELCERA, INC. and FIDOPHARM, INC.,<br><br>    Intervenors. | Case No. 3:07-CV-00125-CDL |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of May, 2012, the foregoing VELCERA'S SUPPLEMENTAL MEMORANDUM OPPOSING MERIAL'S CONTEMPT MOTION was filed electronically with the Clerk of Court using the CM/ECF system, which will provide notification of this filing to all attorneys of record.

*/s/ James C. Clark*
James C. Clark, Esq.
jcc@psstf.com
Ga. Bar No.: 127145
1111 Bay Avenue, Third Floor
Columbus, Georgia 31901
(706) 324-0251

*Attorney for Intervenors Velcera, Inc. and FidoPharm, Inc.*

13