IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

BASF AGRO B.V.,                    *
MERIAL LIMITED, and
MERIAL SAS,                        *

    Plaintiffs,                *

vs.                                *

CIPLA LIMITED, *et al.*,           *        CASE NO. 3:07-CV-125 (CDL)

    Defendants,                *

VELCERA, INC., and                 *
FIDOPHARM, INC.,
                                   *
    Intervenors.               *
_____    *

O R D E R

In a previous Order, the Court found Defendant Cipla, Limited and Intervenors Velcera, Inc. and FidoPharm, Inc. (collectively, "Velcera") in contempt for violating an injunction prohibiting infringement of Plaintiffs Merial Limited and Merial SAS's (collectively, "Merial") '329 Patent. In that Order, the Court concluded that monetary sanctions against Cipla and Velcera, including attorneys' fees and costs, would be determined at a subsequent damages hearing. The Court has scheduled the damages hearing to begin August 27, 2012, and the parties are presently conducting discovery regarding the damages phase of the action. Pending before the Court is Velcera's Emergency Motion to Compel Unredacted Attorneys' Fees Invoices

and To Extend the Expert Disclosure Deadline (ECF No. 251).  For the following reasons, Velcera's motion is granted to the extent described in this Order.

DISCUSSION

Velcera argues in its motion to compel that the reasonableness of Merial's attorneys' fees will be at issue in the damages hearing, and Velcera asserts that the attorneys' fee invoices that Merial has produced during discovery are so heavily redacted that Velcera cannot meaningfully challenge the reasonableness of the fee requests.  Merial argues that the attorneys' fee invoices are protected by the attorney-client and work product privileges.

**I.  Merial's Redaction of Its Attorneys' Fee Invoices**

"[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *see also Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1534 (11th Cir. 1986) (noting that "an award of attorney fees to the injured party in a civil contempt case is within the district court's discretion" and that "reimbursement to a prevailing movant may include expenses reasonably and necessarily incurred in the attempt to enforce compliance") (internal quotation marks omitted).  Merial, as the

fee applicant, "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999); *accord Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1195 (11th Cir. 2002) ("Our precedent places the burden of documenting the appropriate hours and hourly rates on the fee applicant."). "That burden includes 'supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate.'" *Am. Civil Liberties Union of Ga.*, 168 F.3d at 427 (quoting *Norman*, 836 F.2d at 1303). Counsel should "maintain[] records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.* (quoting *Norman*, 836 F.2d at 1303); *see also* M.D. Ga. R. 54.1 (requiring a prevailing party to provide the Court with, among other things, "[a]n itemized bill in which all segments of time are identified as to the nature of the work performed"). Moreover, counsel must exercise "billing judgment" and must exclude from their fee applications "excessive, redundant, or otherwise unnecessary" hours. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Review of Merial's attorneys' fee invoices reveals that the descriptions of the activities conducted by each attorney are so

heavily redacted that they do not provide the Court with sufficient particularity for the Court to assess the reasonableness of the time claimed for each activity. For example, the redacted invoices contain time entries that include descriptions that say "Prepare REDACTED," "Review REDACTED" and "Draft REDACTED." *E.g.*, Velcera's Mot. to Compel Ex. B, Fee Invoice MER-CIPLA-001336, ECF No. 251-2. If the Court attempted to evaluate whether Merial exercised "billing judgment," it would be extremely difficult to decide whether Merial's attorneys' hours are excessive, redundant, or otherwise unnecessary, because the Court cannot decipher from the redacted invoices the task that each attorney worked on for each time entry. *See Oxford Asset Mgmt., Ltd.*, 297 F.3d at 1196 (noting that fee applications that were "so redacted that it [was] impossible to tell (beyond 'research') what the attorney was doing" were likely inadequate because the court "could not have determined how many hours were spent defending each claim or accomplishing any particular task," and the court "could not have assessed whether any hours should [have been] excluded (as redundant or unnecessary) or the hourly rate reduced (because the number of hours submitted for a particular activity was excessive)"). Providing a description that an attorney conducted a "review," or "research," or "drafted" a non-specified document is too vague to allow the Court to assess

whether the time spent on the activity was reasonable. *See id.* at 1197 (cautioning "that where a significant number of entries are severely redacted or it appears that fee counsel has failed to use billing judgment, it may be an abuse of discretion to award fees based on redacted entries").

Velcera, as the party opposing the fee application, has obligations as well. "In order for courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" *Am. Civil Liberties Union of Ga.*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301). Thus, for Velcera to satisfy its obligation to specifically and precisely object to Merial's fee requests as unreasonable, Velcera must have access to Merial's attorneys' fee invoices without the extensive redaction that is currently hindering any meaningful review of the activities conducted by Merial's attorneys. Given Velcera's obligation to make specific objections to Merial's invoices, Merial's concession that it will submit the attorneys' fee invoices to the Court *in camera* is inadequate to give Velcera an opportunity to contest the reasonableness of the charges.

The Court finds that Merial's fee invoices that have been produced to Velcera are so heavily redacted that they do not provide sufficient descriptions of the activities conducted by

Merial's attorneys to allow Velcera or the Court to conduct a meaningful review into whether the fees claimed by Merial are reasonable. Thus, the Court grants Velcera's motion to compel unredacted versions of Merial's fee invoices and requires Merial to provide sufficient descriptions of the tasks worked on by each attorney for each time entry.

## II. Merial's Claim of Attorney-Client Privilege and Work Product Privilege

Merial argues that the fee invoices are protected by the attorney-client privilege and constitute protected work product. The general rule, however, is that the receipt of attorneys' fees is not a privileged matter. *In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 997 (11th Cir. 1992). Beyond Merial's blanket assertion that the fee invoices are privileged and protected work product, Merial has made no attempt to demonstrate that each particular entry is protected by either the attorney-client privilege or the work product privilege. Accordingly, at this point, Merial has failed to demonstrate that any of the entries are protected. Moreover, it is unlikely that any future attempt by Merial to establish privilege would be successful. The Court cannot conceive of any justification for seeking fees for particular legal work and yet not being required to describe in reasonable detail the nature of the work for which compensation is sought.

6

The Court clarifies that in granting the motion to compel, the Court is not prohibiting Merial from redacting clearly privileged material while also providing the Court and Velcera with sufficient information regarding the work done to enable the Court and Velcera to reasonably evaluate the fee request. The Court finds, however, that Merial's first redactions are overly broad.

In conclusion, the Court grants Velcera's motion to compel unredacted versions of Merial's fee invoices sufficient to provide Velcera with a description of the task worked on by each attorney for each time entry. To the extent that Merial continues to maintain that certain entries are protected by the attorney client and/or work product privileges, the Court orders Merial to minimize its redactions in a manner that allows Velcera and the Court to ascertain the nature of the work performed. Merial shall produce the fee invoices to Velcera within seven days of today's Order, and Velcera shall supplement its expert report within seven days after receiving the production.[1]

---

[1] Velcera noted in its reply brief that it would serve an initial expert report if the July 16, 2012 expert report deadline passed prior to the Court's ruling on the motion. The Court presumes that Velcera has done so, and the Court grants Velcera's motion to extend the expert report deadline to allow Velcera to supplement, rather than initially serve, its report.

CONCLUSION

For the reasons explained above, Velcera's Motion to Compel Unredacted Attorneys' Fees Invoices and To Extend the Expert Disclosure Deadline (ECF No. 251) is granted to the extent described in this Order.

IT IS SO ORDERED, this 25th day of July, 2012.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE